UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

CIVIL ACTION NO. 3:05 CV-301-H

PATRICIA E. MATTINGLY                                                                          PLAINTIFF

V.

WILLIAM LACY HOGE III                                                                         DEFENDANT

**MEMORANDUM OPINION**

Plaintiff, Patricia Mattingly (the "Plaintiff"), has sued her former attorney, William Lacy Hoge, III ("Hoge"), for negligent representation regarding her Jefferson Circuit Court 1987 Divorce Judgment (the "Divorce Judgment"). Plaintiff's ex-husband, Joseph Mattingly, owned a life insurance policy as part of his General Electric retirement benefit plan (the "Policy"). Plaintiff contends that Hoge failed to protect the interests of her minor son, Logan Mattingly, as a beneficiary of the Policy. More specifically, Plaintiff says that Hoge breached his professional duties by failing to obtain a Qualified Domestic Relations Order ("QDRO") pursuant 29 U.S.C. § 1056(d)(3)(B) & (C) (2006) and by failing to notify the plan administrator of its existence. Each such action, Plaintiff argues, would have assured her son's beneficial interest.

Now that all discovery has been completed, Defendant Hoge has moved for summary judgment. Having reviewed the briefs and discussed the case with counsel, the Court finds that the Divorce Judgment satisfies the statutory requirements for a QDRO, and that even if Hoge had additional duties to Plaintiff beyond obtaining a QDRO, Plaintiff has not suffered any legal harm as a result of any inaction on his part. For these and the other reasons that follow, the

Court concludes that Plaintiff cannot prevail on her claims and that, therefore, Defendant is entitled to summary judgment.

I.

The parties do not dispute the relevant facts, only the conclusions to be drawn from them.

In 1987, Hoge represented Plaintiff in a divorce from her husband Joseph Mattingly. On December 17, 1987, Jefferson Circuit Court entered the Divorce Judgment requiring that "the respondent [Joseph Mattingly] shall designate the parties' infant child [Logan Mattingly] as his primary beneficiary on any life insurance on his life currently maintained through his employment at General Electric. Said beneficiary shall continue until the child's eighteenth birthday." Hoge did nothing further with respect to the Divorce Judgment. For instance, he did not provide a copy to either General Electric or its ERISA plan administrator. Eight years later, in June, 1995, Joseph Mattingly remarried Anita Mattingly.[1] The next relevant event in the record is that on March 4, 1998, Joseph Mattingly completed a General Electric Benefits Plans Beneficiary Designation naming Anita Mattingly as the primary beneficiary and Logan Mattingly as one of two contingent beneficiaries.[2]

On November 28, 2002, at age 52, Joseph Mattingly died. On December 2, 2002, Plaintiff filed a claim on the Policy proceeds on behalf of Logan Mattingly. On December 19, 2002, Anita Mattingly filed a competing claim. Plaintiff claimed under the Divorce Judgment and Anita Mattingly claimed as spouse and policy designee. Under ERISA and the terms of the General Electric Plan, the administrator, Metropolitan Life Insurance Company ("MetLife"), had

---

[1] Joseph Mattingly's beneficiary designation indicates that he married Anita Mattingly on June 10, 1995.

[2] The record does not reveal the status of the beneficiary designation during the ten years between the divorce and the new designation.

2

the responsibility to investigate the competing claims and determine the proper beneficiary.

After waiting several months for a decision, Plaintiff apparently concluded that the entire process was taking longer than necessary. On March 8, 2002, she filed suit in Floyd Circuit Court in the State of Indiana demanding full payment of the Policy proceeds for her son.[3] Coincidentally, three days later MetLife finished its investigation and determined that the Divorce Judgment met the requirements of a QDRO, and that Anita Mattingly's claim must be denied. For reasons unknown, MetLife notified Anita Mattingly of its decision but did not notify Plaintiff. On May 2, 2003, Anita Mattingly, through her attorney, notified MetLife that she disputed its conclusion and intended to pursue an administrative appeal. As contemplated under ERISA, MetLife filed its own Complaint for Interpleader in federal district court seeking determination of the rightful recipient of the benefits.[4] This resulted in a consolidation of all claims in federal court.

On June 2, 2003, Plaintiff and Anita Mattingly agreed to settle the interpleader action by dividing the proceeds evenly. The amount at issue was $116,258.22. Therefore, each received $58,129.11. Arguing that she would not have settled had her former attorney properly created and notified MetLife of the QDRO, Plaintiff now seeks to recover the difference from Hoge.

II.

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories,

---

[3] ERISA limits those who can bring ERISA causes of action to plan participants, beneficiaries, fiduciaries, and the Secretary of Labor. *See* 29 U.S.C. § 1132(a) (2007). State courts of competent jurisdiction and federal district courts have concurrent jurisdiction for civil actions brought by participants or beneficiaries to recover benefits, to enforce rights, or to clarify rights to future benefits due under the terms of the plan. *See* 29 U.S.C. § 1132(e)(1) (2007).

[4] Federal district court has exclusive jurisdiction over ERISA actions brought by fiduciaries. *See* 29 U.S.C. § 1132(e)(1) (2007). As the plan fiduciary, MetLife was permitted to bring an interpleader action in federal court pursuant Fed. R. Civ. P. 22(1).

and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *accord Harrow Prods., Inc. v. Liberty Mut. Ins. Co.*, 64 F.3d 1015, 1019 (6th Cir. 1995). On summary judgment, the evidence before the Court must be viewed in the light most favorable to the nonmoving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970); *Pack v. Damon Corp.*, 434 F.3d 810, 814 (6th Cir. 2006).

### III.

Plaintiff's general theory of recovery is that Hoge failed to protect Logan Mattingly's interest in Joseph Mattingly's life insurance plan. To establish a claim for negligence under Kentucky law, one must show that the defendant owed a duty of care to the plaintiff, the defendant breached that duty of care, and that the defendant's breach was the proximate cause of the plaintiff's damages. *James v. Meow Media, Inc.*, 300 F.3d 683, 689 (6th Cir. 2002). Plaintiff argues that Hoge had a duty to secure a QDRO, notify MetLife of its existence, and insure that MetLife accepted it as a QDRO. The Court will examine the various issues concerning each of Hoge's duties and their relevance to the case.

### A.

It is now well established that employee life insurance plans such as the Policy are "welfare plans" governed by the Employee Retirement Income Security Act of 1974 ("ERISA"). *See* 29 U.S.C. § 1002(1) (2007); *and see Metro. Life Ins. Co. v. Marsh*, 119 F.3d 415, 419 (6th Cir. 1997). Generally, ERISA preempts state law relating to such employee benefit plans. *See* 29 U.S.C. § 1144(a) (2006); *and see Marsh*, 119 F.3d at 420. There is now an important exception to this general rule, however. State domestic relations orders that meet certain

4

statutory specific requirements can qualify as a QDRO, which are deemed exempt from ERISA preemption. 29 U.S.C. § 1144(b)(7) (2006). Section 1056(d)(3)(C) sets forth the requirements for a domestic relations order to qualify for exemption:

> A domestic relations order meets the requirements of this subparagraph only if such order clearly specifies (i) the name and the last known mailing address (if any) of the participant and the name and mailing address of each alternate payee covered by the order, (ii) the amount or percentage of the participant's benefits to be paid by the plan to each such alternate payee, or the manner in which such amount or percentage is to be determined, (iii) the number of payments or period to which such order applies, and (iv) each plan to which such order applies.

29 U.S.C. § 1056(d)(3)(C) (2006). An "alternate payee" is a spouse, former spouse, child, or other dependent of a pension plan or welfare plan participant. 29 U.S.C. § 1056(d)(3)(K) (2006).

For the reasons that follow, this Court concludes that as a matter of law the Divorce Judgment satisfies all the elements of Section 1056(d)(3)(C) and that it governs the proper beneficiary under the General Electric plan. Here, the Divorce Judgment specifically identifies the participant, Joseph Mattingly, as well as the alternate payees, Patricia and Logan Mattingly, and it notes their last known address. The Divorce Judgment also specifies the percentage of the benefits to be paid. As the primary beneficiary, Logan Mattingly would receive 100% of the benefit of the life insurance policy upon the death of Joseph Mattingly. Since the Divorce Judgment refers to a life insurance policy to be paid in a lump sum upon Joseph Mattingly's death rather than payments from a pension plan, there was no need to specify the number of payments or periods for which the order applies. *Marsh*, 119 F.3d at 422. The Divorce Judgment also specifically identifies the plan as "any life insurance on [Joseph Mattingly's] life currently maintained through his employment at General Electric." This permits an

unambiguous identification of the plan.

From this analysis, the Court must conclude that even if Hoge had a duty to obtain a QDRO during Patricia Mattingly's 1987 divorce proceedings, he has satisfied that duty as a matter of law. Apparently, Plaintiff does not intend to dispute this conclusion because she has not listed any expert witness to dispute it. Considering the certainty of this analysis, it is hardly surprising that MetLife also reached the same conclusion.

B.

Plaintiff argues that Hoge had a specific duty to notify MetLife of the Divorce Judgment and to insure that MetLife accepted it as a QDRO. It is conceded that Hoge did not notify Metlife in 1987 about the existence of the QDRO. Plaintiff's apparent theory is that had Hoge notified MetLife of the QDRO in 1987, then Joseph Mattingly would have been unable to designate Anita Mattingly as his life insurance beneficiary in 1998. Plaintiff cites no case law, statutory law, or Department of Labor Opinion to support this theory. For a variety of reasons, the Court concludes that such a theory cannot, as a matter of law, support a legal malpractice claim in these circumstances.

1.

The first reason is that in 1987 the case law remained unsettled on the question of whether QDRO provisions concerning insurance policy beneficiaries pre-empted ERISA. When Congress enacted ERISA in 1974, it mandated that ERISA "shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan" covered by the statute. 29 U.S.C. § 1144(a). Because the application of this rule appeared to discriminate against women in divorce proceedings, Congress amended ERISA in 1984 through the passage

of the Retirement Equity Act, which created the QDRO exception to ERISA pre-emption. *See Mackey v. Lanier Collection Agency & Serv., Inc.*, 486 U.S. 825, 838 (1988). Even after that amendment, however, a question remained as to the scope of the new exception. This uncertainty is fatal to Plaintiff's claim.

Plaintiff has listed an attorney expert witness who would opine that Hoge should have notified MetLife about the QDRO. Plaintiff argues that had Hoge done so she could have been assured that the Divorce Judgment was enforceable. The factual and legal reality demonstrates this assertion to be untrue. To be sure, MetLife could have determined that the Divorce Judgment met the requirements of a QDRO. But neither MetLife nor anyone else could have provided Plaintiff any assurance that the QDRO's insurance beneficiary provisions would prevail over ERISA. The simple reason was that the law on this point remained entirely unclear through most of the land. Some courts believed that the 1984 revisions only exempted a QDRO concerning pension plans, while others believed that the QDRO exception extended to welfare plans as well. Even seven years after Plaintiff's divorce, when the Seventh Circuit decided *Metropolitan Life Ins. Co. v. Wheaton*, 42 F.3d 1080 (7th Cir. 1994), the issue appears to have remained in considerable dispute. Not until 1997, did the Sixth Circuit first hold that the insurance beneficiary provisions of a QDRO are excepted from ERISA's broad preemption of state law. *See Marsh*, 119 F.3d at 421-22.

In 1987, therefore, Plaintiff's only true protection was the Divorce Judgment's requirement that Joseph Mattingly designate Logan Mattingly as his primary beneficiary. Hoge cannot be held responsible in any manner to ensure against Joseph Mattingly's breach of the Divorce Judgment some eleven years later.

2.

A second reason Plaintiff's theory cannot support a legal malpractice claim against Hoge is that even MetLife's notice of the existence of a QDRO would not alter its status or Plaintiff's rights under it. Under federal law, the administrator of the plan initially determines whether a court order is a QDRO. *See* 29 U.S.C. § 1056(d)(3)(G)(i)(II) (2006). Under any circumstances, MetLife would have been bound to determine whether the Divorce Judgment substantially complied with the requirements of Section 1056(d)(3)(C) and whether it governs the life insurance beneficiary designation. A challenge to such a determination could be heard in federal court. *See* 29 U.S.C. § 1132(a)(3) (2006); 29 U.S.C. § 1132(e) (2006). Thus, even if a duty exists to notify the plan administrator, the failure to do so did not alter MetLife's ultimate responsibility or the outcome of this case in any apparent manner. The record is clear on this issue; MetLife made a determination recognizing that the Divorce Judgment qualified as a QDRO and denied Anita Mattingly's claim.[5]

Even had Hoge provided MetLife with a copy of the Divorce Judgment in 1987, that would not have prevented Joseph Mattingly from listing Anita Mattingly as his beneficiary some ten years later. Nor would it have prevented Anita Mattingly from making some claim to the policy proceeds based on her status as the legal beneficiary of her husband's estate. In the face of competing claims to the proceeds, MetLife would still have filed its interpleader and the case

---

[5] MetLife found there was a QDRO and denied Anita Mattingly's claim in a March 11, 2003, letter to Joseph H. Mattingly III, Anita Mattingly's attorney. Although this letter is frustratingly absent from the record, it is referenced by a May 2, 2003, response from Joseph H. Mattingly III, appealing MetLife's denial of Anita Mattingly's claim. MetLife's conclusions are also referenced in paragraph 18 of the federal interpleader action. Plaintiff's counsel states that he received no notice from MetLife in March, 2003, that it had concluded that the Divorce Judgment was a QDRO. However, had Plaintiff merely obtained a copy of the administrative record or read the interpleader, MetLife's opinion would have been clearly disclosed.

would have resulted in litigation. Here, Patricia and Logan Mattingly's rights in the Policy proceeds hinge on the validity of the QDRO itself, not the timing of notice to MetLife.

Hoge's failure to notify MetLife about the Divorce Judgment did not destroy Plaintiff's claim to the life insurance proceeds in these circumstances. Even had Hoge notified MetLife and even had it accepted the Divorce Judgment as a QDRO, neither Plaintiff, Hoge nor Metlife would have been certain that it had the effect of pre-empting ERISA as to the life insurance policy. This Court cannot impose on Hoge a duty to assure that Metlife would follow the insurance beneficiary provisions of the Divorce Judgment at Joseph Mattingly's death. The legal effect of the QDRO was unclear in 1987. By obtaining a divorce decree that met the statutory definition of a QDRO, Hoge did enough to protect Plaintiff's rights when the issues arose seventeen years later.

## IV.

Plaintiff's claim fails for another reason. Where this Court determines that Plaintiff had a legal right to the entire proceeds under the Policy, Plaintiff cannot claim as damages in a legal malpractice case those amounts that she voluntarily surrendered in settlement. *See Mitchell v. Transamerica Ins. Co.*, 551 S.W.2d 586, 588 (Ky. Ct. App. 1977). As the Court suggested earlier, no amount of legal effort could have insured that Joseph Mattingly would have listed Logan Mattingly as his beneficiary under the policy, nor could any legal efforts have absolutely prevented Anita Mattingly from challenging a beneficiary designation. Anita Mattingly's ability to challenge the QDRO with MetLife or assert a claim in a court of law were not dependent upon the actions of Hoge. Because Plaintiff's rights had not been compromised by actions of her attorney, she suffered no legal damages.

Kentucky case law supports this conclusion. In *Mitchell*, the plaintiffs sued their former lawyer for negligently failing to file a tort claim prior to the expiration of the statute of limitations. *Id.* at 587. The court held that since the plaintiffs had had the right to fully litigate all claims against the original defendants in a court of competent jurisdiction before electing instead to settle, the plaintiffs could not prove that they had suffered damages caused by their attorney. *Id.* at 588. This is different from two other Kentucky cases in which the plaintiffs were "forced to settle" because attorney negligence had severely limited their legal claims. *See Goff v. Justice*, 120 S.W.3d 716 (Ky. Ct. App. 2002) (holding that settlement by plaintiffs did not preclude a finding of damages in a legal malpractice action when their prior attorney's negligence had resulted in court orders limiting the presentation of expert testimony in a medical malpractice action); *and see Kirk v. Watts*, 62 S.W.3d 37 (Ky. Ct. App. 2001) (holding that settlement by plaintiff did not preclude a finding of damages in a legal malpractice action when their prior attorney's negligence resulted in the lost opportunity for the client to maintain the case in her own name rather than by her trustee in bankruptcy). *Mitchell* and the current case are distinguishable from *Goff* and *Kirk* because the attorneys' negligence in the latter two cases harmed their plaintiffs' ability to seek a remedy.

Any claim of damage must be founded upon or causally related to the loss of a legal right.
Here, Hoge did nothing that weakened Plaintiff's legal right to the proceeds. Indeed, this Court has determined that Plaintiff's rights to the entire proceeds are absolute. Therefore, no amounts conceded in settlement discussions can be considered causally related to an act of negligence.

For all of these reasons, Plaintiff's claims cannot proceed and the Court will enter an

order consistent with this Memorandum Opinion.

cc:	Counsel of Record